IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 91-3427
_____

UNITED STATES OF AMERICA

Plaintiff-Appellee,

versus

THOMAS BENTLEY-SMITH and
EDSIL M. ELLEDGE, JR.,
a/k/a Ken Elledge,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Louisiana
_____
(September 20, 1993)

Before JOHNSON, SMITH, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Following a jury trial, Ken Elledge and Thomas Bentley-Smith were convicted of conspiring to illegally transport hazardous waste and illegally transporting hazardous materials. Bentley-Smith was also convicted of storing hazardous material without a permit. The defendants raise several issues in this appeal. Finding no reversible error, we affirm.

I. FACTS AND PROCEDURAL HISTORY

During early 1983, the Louisiana Department of Agriculture (LDA) sought to dispose of twelve drums of herbicide containing 2,4,5-Trichlorophenoxyacetic acid (2,4,5-T) and 2,4-

dichlorophenoxyacetic acid (2,4-D) )) a combination of chemicals commonly known as agent orange. At all relevant times, 2,4-D and 2,4,5-T were both listed as hazardous wastes by the Environmental Protection Agency. See 40 C.F.R. § 261.33. Several of the drums contained liquid herbicide, others contained herbicide that had solidified and separated into layers, and at least one drum contained contaminated soil and debris. In May of 1985, Ken Elledge, the program coordinator for LDA's pesticide waste program, contacted T.H. Agriculture and Nutrition Company (THAN) to see whether it would accept them.[1] Robert Wells, who served as vice-president of THAN, agreed to accept the drums. Wells contacted Paul Zimmerman in the Baton Rouge office of Chemical Waste Management (CWM) to arrange for transport of the drums.

On September 23, 1985, Elledge and Thomas Bentley-Smith, a Project Manager for CWM, met at an LDA warehouse and loaded the drums into a rental truck. Although all of the drums contained a chemical identified as a hazardous waste under the Resource Conservation and Recovery Act (RCRA),[2] no manifest was prepared for the shipment.[3] Bentley-Smith then transported the drums to unit

---

[1] THAN, a subsidiary of the original manufacturer of the herbicide, was formed to administer the cleanup of facilities that had manufactured agent orange.

[2] RCRA defines hazardous wastes as wastes found to pose significant risks to human health and the environment. 42 U.S.C. § 6903(5). Regulations promulgated by the EPA list the various wastes that have been identified as hazardous. See 40 C.F.R. pt. 261.

[3] RCRA prohibits the transportation of hazardous waste without a tracking form known as a RCRA manifest. 42 U.S.C. §§ 6922(a)(5), 6923(a)(3). RCRA also prohibits the storage of hazardous wastes without a permit. 42 U.S.C. § 6925.

102 of a mini-warehouse facility in Baton Rouge called David's Mini Storage. The drums remained in unit 102 for about 17 months, until Zimmerman's administrative assistant notified CWM management.

In September of 1990, Elledge, Bentley-Smith, Zimmerman, and Wells were indicted for violations of RCRA. All four men were charged with conspiring to transport hazardous wastes without a hazardous waste manifest and with transporting and causing the transportation of hazardous waste without a hazardous waste manifest in violation of 42 U.S.C. § 6928(d)(5). Bentley-Smith alone was charged with storing hazardous waste without a permit in violation of 42 U.S.C. § 6928(d)(2)(A). One week before trial, Zimmerman pled guilty and testified against the others. Wells was subsequently acquitted by the jury. Elledge and Bentley-Smith were convicted on all counts.

## II. DISCUSSION

### A. Peremptory Strikes

During the jury selection, the defendants used eight of their thirteen peremptory challenges to strike all of the black members of the venire. The government objected to the defendants' proposed strikes on equal protection grounds. After extensive argument by both sides, the district court determined that the defendants' strikes had offended the potential jurors' equal protection rights. The court specifically rejected the defendants' reasons for

striking three of the black jurors as pretextual.[4]  The district court then reseated the entire venire and directed the attorneys to repeat the peremptory strike process.  The defendants were instructed, however, that they could not use peremptory challenges to strike the three black jurors in question.  One of these three jurors, George Williams, served on the jury.

It is settled that the Fifth Amendment prevents criminal defendants from using peremptory strikes on the basis of race. Georgia v. McCollum, 112 S. Ct. 2348, 2359 (1992).[5]  It is equally settled that the prosecution has standing to assert the equal protection rights of excluded jurors.  Id. at 2357.  The district court's determination that a party has used peremptory strikes in a discriminatory manner is a finding of fact and thus cannot be

---

[4]  The district court rejected the defendants' explanations for striking three jurors )) George Williams, Lula Station, and Jacqueline Richardson.  For Station, the main reason given for the strike was one attorney's feeling that she might be a follower instead of an independent thinker.  Also, the same attorney noted that she worked for the East Baton Rouge Parish School Board, a school board that had some asbestos problems in the past.  None of the other attorneys could recall why Station was challenged.

For Richardson, the two attorneys for Wells explained that, since she worked as an insurance agent, she might have had some contact with claims arising from injury to property.  Richardson had also worked as a secretary for a relative who was an attorney.

The reasons for striking Williams were a little more complex.  Bentley-Smith did not want to strike Williams at all.  Elledge's attorney explained that he had challenged Williams because he had served on two previous juries and both had returned guilty verdicts.  (This was incorrect, however.  Williams, like several of the white veniremen, had served on only one jury )) although that jury did return a guilty verdict.)  Wells's attorney felt that Williams, a middle school principal, was used to handing out discipline and might tend to be authoritarian.

[5]  In McCollum, the Supreme Court actually applied the Equal Protection Clause of the Fourteenth Amendment.  In a federal criminal case, the same protections apply through the Fifth Amendment.  United States v. Pofahl, 990 F.2d 1456, 1464 n.3 (5th Cir. 1993), petition for cert. filed (U.S. Aug. 4, 1993) (No. 93-5526).

4

overturned by this Court absent clear error.  Hernandez v. New York, 111 S. Ct. 1859, 1871 (1991).  The district court's determination is entitled to great deference, since findings in this context largely turn on an evaluation of the credibility or demeanor of the attorney who exercises the challenge.  See Batson v. Kentucky, 476 U.S. 79, 98 n.21 (1986); Hernandez, 111 S. Ct. at 1869.  Where a finding of fact is based upon an incorrect legal standard, the finding loses the insulation of clearly erroneous review.  Pavlides v. Galveston Yacht Basin, 727 F.2d 330, 339 n.16 (5th Cir. 1984).

In the instant case, defendants used their peremptory challenges to strike all blacks from the jury pool.  The defendants concede that this demonstrated a prima facie case of racial bias and that the burden then shifted to the defendants to provide race-neutral reasons for the strikes.  However, the defendants claim that the district court erred in determining that the defendants applied their peremptory strikes in a racially discriminatory manner.

1.  Batson's burden of proof

The defendants first argue that the district court improperly allocated the burden of proof in reaching its decision.  The Supreme Court has outlined a three-step process for determining whether preemptory strikes have been applied in a discriminatory manner.  First, the claimant must make a prima facie showing that the peremptory challenges have been exercised on the basis of race. Second, if this requisite showing has been made, the burden shifts

5

to the party accused of discrimination to articulate race-neutral explanations for the peremptory challenges. Finally, the trial court must determine whether the claimant has carried his burden of proving purposeful discrimination. See Batson, 476 U.S. at 93-98; McCollum, 112 S. Ct. at 2359 (extending Batson framework to criminal defendant's discriminatory use of peremptory strikes).

The "shifting burden" described in the Batson framework is one of production only. The ultimate burden of persuasion always lies with the party making the claim of purposeful discrimination. At the second stage of the Batson framework )) where the party accused of discrimination must articulate a race-neutral explanation for the peremptory challenges )) the issue is merely the facial validity of the explanation. "Unless a discriminatory intent is inherent in the . . . explanation, the reason offered will be deemed race neutral." Hernandez, 111 S. Ct. at 1866. In the instant case, the defendants argue that the district court erred by improperly shifting the burden of persuasion onto the defendants )) and requiring the defendants to prove that the strikes were not racially motivated.

We cannot agree. Although the defendants are able to parse out quotations from the district court that appear to support their argument, an examination of the whole transcript tells a different story. Contrary to the defendants' suggestions, it appears that the district court correctly understood the three-part analysis required by Batson.

The district court specifically noted that, under Batson,

6

after the government makes a <u>prima facie</u> showing of discrimination, the burden shifts to the defendant to advance a neutral explanation for the challenge.  The court also stated that once the defendants give their explanations, the government has the opportunity to show that defendants' claims are pretextual.  The district court's holding followed extensive discussion on this issue by all parties, with the defense presenting their explanations for the peremptory challenges and the prosecution attempting to show that the defendants' proffered reasons were pretextual.

At that point, the <u>Batson</u> framework required the district court to determine whether the prosecution had established purposeful discrimination.  In a typical peremptory challenge inquiry, the decisive question will normally be whether a proffered race-neutral explanation should be believed.  <u>See</u> <u>United States v. Johnson</u>, 941 F.2d 1102, 1108 (10th Cir. 1991).  There will seldom be any evidence that the claimant can introduce )) beyond arguing that the explanations are not believable or pointing out that similar claims can be made about non-excluded jurors who are not minorities.

That is exactly what the government did in this case.  A review of the entire record convinces us that the district court did not shift the burden of persuasion to the defendants.  Rather, the district court listened to the defendants' proffered explanations and to the response of the prosecution, and simply reached a decision that the defendants' explanations for three of the peremptory strikes were pretextual.

7

2.   The Role of Intuition

      Next, the defendants argue that the district court erred in
concluding that intuitive judgment could not be a race-neutral
reason for the challenged peremptory strikes.  At the chambers
conference discussing the Batson question, the court opined that
"[s]ome things that are not considered to be neutral acts are as
follows:  denial of discriminatory motive; affirmance of his/her
good faith of the defendant, nor intuitive judgment of the
defendant's counsel will serve to form the non-discriminatory basis
upon which the peremptory challenges have to be based."

      The defendants argue that this was contrary to the law of this
circuit and, as a result, the convictions must be reversed.  While
we agree that the district court's statement, standing alone, is an
inaccurate statement of the law of peremptory challenges under
Batson, we conclude, looking at this record as a whole, that the
district court employed the right test, which is to decide whether
the attorney, despite the reasons given for the peremptory strikes,
actually engaged in purposeful discrimination in making those
strikes.

      Earlier decisions of this court have made it plain that the
process of choosing a jury may be influenced by the "intuitive
assumptions" of the attorneys.  See, e.g., United States v. Lance,
853 F.2d 1177, 1181 (5th Cir. 1988).  In fact, many of the
judgments made by counsel in picking a jury are purely intuitive
and based upon inarticulable factors, or even hunches.  Thus, we

8

specifically have approved of such subjective manifestations as eye contact (or absence of the same) as justifications for rejecting a potential juror:

> [The plaintiffs] argue that [the defendant's] reliance on an unverifiable subjective consideration such as eye contact casts further doubt on its justification. We disagree. Jurisprudentially, it is too late in the day to contend that eye contact fails to satisfy the striking party's burden of articulating a neutral explanation. Recognizing that "the decision to exercise a peremptory challenge . . . is subjective" and often "influenced by intuitive assumptions," we have explicitly accepted eye contact (or lack thereof) as a legitimate rationale. <u>In the Batson context, subjective considerations might not be susceptible to objective rebuttal or verification. We nonetheless permit them because of the inherent nature of peremptory challenges, with the understanding that ultimate Batson findings "largely will turn on evaluation of credibility" of counsel's explanation</u>.

<u>Polk v. Dixie Ins. Co.</u>, 972 F.2d 83, 86 (5th Cir. 1992) (per curiam) (emphasis added) (citing or quoting <u>Thomas v. Moore</u>, 866 F.2d 803, 805 (5th Cir.), <u>cert. denied</u>, 493 U.S. 840 (1989); <u>Lance</u>, 853 F.2d at 1181; <u>United States v. Terrazas-Carrasco</u>, 861 F.2d 93, 94-95 n.1 (5th Cir. 1988); <u>United States v. Cartlidge</u>, 808 F.2d 1064, 1071 (5th Cir. 1987); <u>Batson</u>, 476 U.S. at 98 n.21), <u>cert. denied</u>, 113 S. Ct. 982 (1993).[6]

---

[6] This court repeatedly has upheld peremptory challenges based upon intuition and other objectively unverifiable considerations. <u>See, e.g.</u>, <u>United States v. Hinojosa</u>, 958 F.2d 624, 632 (5th Cir. 1992) ("[V]alid reasons for exclusion may include intuitive assumptions.); <u>United States v. Clemons</u>, 941 F.2d 321, 325 (5th Cir. 1991) ("[T]he . . . explanation . . . need not be quantifiable and may include intuitive assumptions upon confronting a potential juror."); <u>United States v. Roberts</u>, 913 F.2d 211, 214 (5th Cir. 1990) ("Intuitive assumptions about a potential juror's interest and attitudes can be acceptable as a neutral explanation for a peremptory challenge."), <u>cert. denied</u>, 111 S. Ct. 2264 (1991); <u>United States v. De La Rosa</u>, 911 F.2d 985, 991 (5th Cir. 1990) ("We have stated that `valid reasons for exclusion [of jurors] may include "intuitive assumptions" upon confronting a venireman . . . eye contact, demeanor, age, marital status, and length of residence in the community . . . '. It is not essential that the . . . basis
(continued...)

In erroneously stating that intuition is not a sufficient ground, standing alone, on which to base a peremptory challenge, the district court simply may have been expressing the understandable concern that counsel's claim to an intuitive reaction is not susceptible to the ordinary methods of proof and thus may be suspect as a proxy for a race-based challenge. But the ultimate inquiry for the judge is not whether counsel's reason is suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-based.

This is no different from the credibility choices that finders of fact )) whether judges or juries )) are called upon constantly to make. An attorney who claims that he or she struck a potential juror because of intuition alone, without articulating a specific factual basis such as occupation family background, or even eye contact or attentiveness, is more vulnerable to the inference that the reason proffered is a proxy for race. That is not to say, however, that the reason should be rejected out of hand; that is a call for the judge to make, based upon his or her evaluation of such things as the demeanor of counsel, the reasonableness of the

---

[6](...continued)
for a peremptory challenge be quantifiable." (Citations omitted; ellipses in original.)), cert. denied, 111 S. Ct. 2275 (1991); United States v. Romero-Reyna, 889 F.2d 559, 560-61 (5th Cir. 1989) (upholding peremptory strikes based upon counsel's invocation of her "P rule," whereby she systematically struck all potential jurors whose occupations began with the letter "P," such as pipeline operators, pharmacists, and postal workers), cert. denied, 494 U.S. 1084 (1990); United States v. Moreno, 878 F.2d 817, 820-21 (5th Cir.) (allowing use of "intuitive assumptions," including counsel's "gut reaction" that a commercial artist would have sympathy for persons involved with drugs), cert. denied, 493 U.S. 979 (1989); Terrazas-Carrasco, 861 F.2d at 94 ("Valid reasons for exclusion may include `intuitive assumptions' upon confronting a venireman.").

10

justifications given, and even the court's personal observation of the venireman.

> We explained this process carefully in <u>Thomas v. Moore</u>:

> The decision to exercise a peremptory challenge, in contrast to a challenge for cause, is subjective; and, often, <u>the reasons behind that decision cannot be easily articulated</u>. Determining whether [an attorney] has acted discriminatorily in his use of a peremptory challenge depends greatly upon the observations of the presiding judge . . . . This firsthand review by the trial court is vital to the balance struck between the historical role and practice of peremptory challenges and the demands of equal protection.

866 F.2d at 805 (emphasis added, citations omitted).

This comports with <u>Batson</u>'s requirement that acceptable explanations be "clear and reasonably specific." 476 U.S. at 98 n.20. That is to say, if, for example, an attorney claims that he or she has struck a prospective juror because intuition tells the attorney that that juror will be inattentive or will be a follower instead of independent-minded, that is a specific reason )) and perhaps the best reason the lawyer can give about that juror )) why that particular juror is not suited for the case at hand.

The reason certainly is stronger if the attorney is able to articulate an objective fact, such as that the juror was slow in answering questions or had to have questions repeated. Without such an objective buttress, the judge may feel more free to suspect that race is really at the heart of the challenge. On the other hand, the judge is free, based upon all the information presented and that judge's eyewitness observation of counsel, to conclude that the reason is offered in good faith and not as a subterfuge for race.

Our review of the entire record shows that the district court did not commit reversible error in this case. The defendants' explanations for striking Richardson and Williams )) the venireman who eventually wound up sitting on the jury[7] )) had nothing to do with the intuition of the attorneys. Thus, even if the district court was mistaken about the proper role of intuition, it cannot be said that the incorrect legal standard influenced the district court's finding of fact on these two prospective jurors. The district court's conclusion that the explanations for these two strikes were pretextual would still be reviewed under the clearly erroneous standard.

In contrast, the explanation offered for striking Station )) that she seemed to be a follower )) did appear to involve only the intuition of the attorneys. At first blush, we might conclude that the district court disallowed the strike of Station on the basis of an erroneous view that an intuitive judgment alone will not suffice. Our review of the record reveals, however, that the district court in fact did exactly as the law requires: It looked at the circumstances at hand and made the ultimate judgment call that the strike of Station was race-based and thus could not stand.

Defending his strike of Station, defense counsel stated, "I think my vote regarding Ms. Station was that I thought she was going to be )) she might not be an independent thinker. She would

---

[7] Even though only Williams eventually served on the jury, we must also examine the district court's rejection of the defendants' explanations for the two other prospective jurors. "The denial or impairment of the right to exercise peremptory challenges is reversible error without a showing of prejudice." United States v. Broussard, 987 F.2d 215, 221 (5th Cir. 1993).

12

be a follower."[8]  For example, in its discussion with the

attorneys, the district court stated,

> I think as to three jurors the reasons given would not support the standard in <u>Batson</u> . . . .  And that is Ms. Station, Mr. Williams and Ms. Richardson.  Just the reasons given are just not there other than the fact that I believe these people are black.  More so on Ms. Station and Ms. Richardson.

Particularly in regard to Station, it is evident that the

court was not rejecting the attorney's explanation solely because

it was intuitive.  Instead, the court evaluated all the information

it had before it, including credibility judgments, in reaching its

conclusion:

> On Lula Station, the court cannot see any reason. Just telling the court that she is a follower clearly violates what the Supreme Court has stated that that is not a reason for merely excusing a juror.  And the court finds that insofar as Lula Station is concerned, <u>the court finds that she was excluded solely because of her race, and therefore, makes such a finding</u>.
>
> The court further finds that the defendants have not submitted any evidence to demonstrate that the rebuttal evidence presented by the government insofar as Ms. Station is concerned should be rejected by the court.  Ms. Station is sixty-six years old, is the mother of six children, is )) just to say that because of that she, the gut feeling of the defendants is that she is a follower.  For no other reason, the court must

---

[8] Counsel also stated,

> I am looking at my notes to see if I have any other notes.  I have got them scattered across my file.  And the other one was, Judge, she worked for the East Baton Rouge Parish School Board.  I think it had )) I don't know if we mentioned the asbestos problems that the East Baton Rouge Parish School Board is having or not.  I am not sure in connection with the hazardous waste.  I am not sure whether she raised her hand or not when that came up, but I am trying to look at my notes to see whether )) [.]

This may indicate that, in fact, an objective fact, in addition to an intuitive judgment, was offered in regard to Station.  Nevertheless, the reasons offered did not impress the district judge to accept the strike as other than race-based.

13

and does assume <u>under the facts of this case in considering the overall conduct of the defendants in this case</u> that she was stricken solely because of her race. [Emphasis added.]

Accordingly, we conclude that the district court employed the proper test in determining that the strike of Lula Station was race-based. Its finding of discrimination is not clearly erroneous.[9]

3. <u>Findings of Fact</u>

As a last resort, the defendants argue that, even if the correct legal standard was applied, the district court was clearly erroneous in finding purposeful discrimination in the exercise of the defendants' peremptory strikes. In pressing this argument, the defendants are at a tremendous disadvantage. We will not find a district court's ruling to be clearly erroneous unless we are left with the definite and firm conviction that a mistake has been committed. <u>Pofahl</u>, 990 F.2d at 1466. As discussed earlier, since the district court's determination that a party has used peremptory strikes in a discriminatory manner largely turns on an evaluation of the credibility or demeanor of the attorneys involved, the finding is entitled to great deference. Based upon the record in this case, we cannot say that the district court's findings were

_____

[9] It should also be noted that the district court accepted the explanation that one of the other prospective jurors was challenged because defense attorneys felt he would be unable to comprehend the evidence. This explanation also involved an intuitive component. However, the intuitive assumption that this prospective juror would be unable to comprehend the evidence was based upon a specific articulable observation that he hesitated before answering questions during voir dire. The fact that this explanation was accepted serves to illustrate further that the district court was not applying a <u>per se</u> rule against intuitive assumptions.

14

clearly erroneous.

B.  Rule 404(b) Evidence

Bentley-Smith also argues that the district court erred in admitting evidence under FED. R. EVID. 404(b) of other wastes that were also stored at the mini-warehouse facility in Baton Rouge. The prosecution introduced evidence that Bentley-Smith knew that the mini-warehouse also contained two "lab-pack drums" that had been shipped from a THAN facility in Kansas City.  These two lab packs were fifty-five-gallon drums packed with smaller containers of laboratory waste along with absorbent materials to soak up any spills.[10]  The district court determined that this evidence was admissible under rule 404(b) because it was potentially relevant to the question of whether Bentley-Smith knew that the twelve LDA drums contained hazardous waste.

A district court's decision to admit evidence under rule 404(b) is reviewed under an abuse of discretion standard. United States v. Anderson, 933 F.2d 1261, 1268 (5th Cir. 1991).  In criminal cases, however, our review is necessarily heightened. Id. Rule 404(b) states that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

In United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978),

---

[10]  The two lab-pack drums did not contain 2,4,5-T.  In fact, it is unclear whether the drums contained any listed hazardous waste at all.

15

<u>cert. denied</u>, 440 U.S. 920 (1979), this court outlined a two-part test to determine the admissibility of evidence under rule 404(b). First, the extrinsic offense evidence must be relevant to an issue other than that defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must also meet the other requirements of FED. R. EVID. 403.[11]

At trial, it was undisputed that Bentley-Smith knowingly transported the twelve drums from the LDA to the mini-storage facility. The real question was whether he knew that the drums contained "waste" within the meaning of RCRA. The mere fact that two drums containing known waste products were also stored at the same facility says very little about Bentley-Smith's knowledge of the contents of the twelve drums in question.

Ultimately, however, we do not have to decide whether the lab-pack evidence was relevant to an issue other than character. We must view any error "not in isolation, but in relation to the entire proceedings." <u>United States v. Brown</u>, 692 F.2d 345, 350 (5th Cir. 1982). In spite of Bentley-Smith's assertions to the contrary, there was plenty of evidence that he knew the material in the twelve LDA drums was waste.

Bentley-Smith's employer, CWM, was in the business of waste transport and disposal. The labels on the drums indicated that

---

[11] Rule 403 provides "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'

some of them contained contaminated dirt and debris. Bentley-Smith examined the contents of the drums before moving them and returned the next day to collect samples. Finally, when interviewed by an EPA investigator before his indictment, Bentley-Smith repeatedly referred to the drums as waste. Given all of the evidence indicating that Bentley-Smith knew the LDA drums contained waste, any error in admitting evidence of the two lab-pack drums would not have substantially influenced the jury's verdict and was therefore harmless.

## C. The Jury Charge

Both defendants requested that the district court instruct the jury that, as an element of both of the charged offenses, the government must prove that the defendants knew the substance in the LDA drums was waste. The defendants now argue that the district court erred in failing to give this jury instruction.

The district court's refusal to give a requested instruction is reviewed for abuse of discretion. United States v. Sellers, 926 F.2d 410, 414 (5th Cir. 1991). The trial judge has "substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented." United States v. Pool, 660 F.2d 547, 558 (5th Cir. Unit B Nov. 1981).

A trial judge's refusal to deliver a requested instruction constitutes reversible error only if three conditions exist: (1) the instruction is substantially correct; (2) it is not substantially covered in the charge actually given to the jury; and

17

(3) it concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to present a given defense effectively.  United States v. Grissom, 645 F.2d 461, 464 (5th Cir. Unit A May 1981).  This court will reverse only if the defendant was improperly denied the chance to convey his case to the jury.  "[I]n other words, an abuse of discretion occurs only when the failure to give a requested instruction serves to prevent the jury from considering the defendant's defense."  United States v. Hunt, 794 F.2d 1095, 1097 (5th Cir. 1986).

In this case, the defendants' argument must be rejected because it fails to satisfy the second Grissom condition.  On the day after the jury began deliberations, the district court gave the jury a modified charge explaining that if defendants did not discard or intend to discard the material in the drums, the defendants must be found not guilty.  This supplemental instruction substantially covered the charge requested by defendants.

D.  Prosecutorial Misconduct

The other issues raised by the defendants can be disposed of readily.  First, the defendants argue that the district court erred in refusing defendants' request for a mistrial and motion for a new trial based on prosecutorial misconduct.  The standard of review for a denial of a motion for mistrial is abuse of discretion.  United States v. Rocha, 916 F.2d 219, 234 (5th Cir. 1990), cert. denied, 111 S. Ct. 2057 (1991).

We will reverse a conviction for prosecutorial misconduct only

18

if the misconduct was so pronounced and persistent that it casts serious doubts upon the correctness of the jury's verdict. United States v. Carter, 953 F.2d 1449, 1457 (5th Cir.), cert. denied, 112 S. Ct. 2980 (1992). After considering the challenged comments made during the prosecution's closing arguments, we conclude that any improper statements were insufficient to cast doubts upon the jury's verdict.

More troubling is the defendants' argument that we should order a new trial based upon newly discovered evidence.[12] One week before his testimony, Zimmerman )) one of the original defendants who had agreed to testify against the others )) informed the prosecution that he had use cocaine some nine days earlier. The prosecution did not inform the defendants of Zimmerman's admission. It is undeniable that this impeachment evidence falls under the Brady rule. United States v. Weintraub, 871 F.2d 1257, 1260 (5th Cir. 1989). The only question is whether the withheld information was material, so as to require reversal of the defendants' convictions.

Brady material that the prosecution improperly withholds will require reversal "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a

---

[12] On March 28, 1991, the defendants filed a motion for new trial that was denied by the district court. On July 10, 1991, the defendants filed a motion for new trial based upon newly discovered evidence. Since an appeal had already been filed, the district court declined to hear this second motion for a new trial.

19

probability sufficient to undermine confidence in the outcome."
Id.

In this case, the defense was plainly aware of Zimmerman's history of drug and alcohol abuse before Zimmerman testified. After holding a hearing outside the presence of the jury, the district court held that the defendants could introduce evidence of Zimmerman's drug use only as it related to his ability to recall the events leading up to the criminal indictments. During the course of that hearing, Zimmerman admitted to using cocaine about ten days earlier. Under the district court's evidentiary ruling )) which is not challenged by the defendants )) the evidence of Zimmerman's drug use immediately before trial would not have been allowed. Since the defense would not have been allowed to introduce the evidence, it cannot be said that there is _any_ possibility that the result of the trial would have been different had this evidence been disclosed to the defense.


E.  Sufficiency of the Evidence

Finally, Elledge argues that the evidence was insufficient to support his conviction for knowingly transporting a hazardous waste. The standard of review for a sufficiency of the evidence challenge is a familiar one. We will only reverse if, when viewing the evidence in the light most favorable to the verdict, we nonetheless concludes that no reasonable trier of fact could have found that the government proved each element of the crime beyond a reasonable doubt. United States v. Lopez-Escobar, 920 F.2d 1241,

20

1245 (5th Cir. 1991).

Elledge claims that the evidence was insufficient to show that he knowingly arranged for the transportation of hazardous waste. According to Elledge, he was unaware that the drums contained waste material. Elledge argued that he thought the drums contained usable product that was being returned to the manufacturer.

If the jury had accepted his argument, Elledge would have been acquitted. Unfortunately for Elledge, however, "[a] jury is free to choose among reasonable constructions of the evidence." United States v. Bell, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), aff'd, 462 U.S. 356 (1983). In this case, evidence was presented that Elledge knew that the drums contained waste and that he was attempting to dispose of that waste. The jury rejected Elledge's version of the facts, and the evidence was sufficient to support the jury's conclusion.

III. RESPONSE TO SEPARATE OPINION

We respond now to the separate opinion[13] of our able colleague. Judge Johnson's reliance upon United States v. Horsley, 864 F.2d 1543 (11th Cir. 1989) (per curiam), as somehow contra authority plainly reveals a basic misunderstanding of what is meant

---

[13] Although our disagreeing brother insists upon styling his separate opinion a "dissent in part," he agrees with the reasoning of all but part II.A.2 and with the result reached by the panel majority, i.e., to affirm the convictions in toto. Thus, the separate writing more properly should be labeled a special concurrence. See United States v. X-Citement Video, 982 F.2d 1285, 1292 n.* (9th Cir. 1992) (Kozinski, J., "dissenting in part") ("Strictly speaking, this is a concurrence, because I too would reverse [the defendant's] conviction . . . . I style it a dissent, however, because I would avoid striking down an Act of Congress . . . .").

21

by what Judge Johnson calls "unsupported intuition" and "specific articulable factors."

In <u>Horsley</u>, after the defendant had made a <u>Batson</u> challenge to the government's striking of a black veniremember, the prosecutor answered, "I don't have any particular reason. I just got a feeling about him as I have about Mr. Gonzalez and several others." <u>Id.</u> at 1544 (footnote omitted). The court of appeals properly held that this "obviously falls short of [<u>Batson</u>'s] requirement." <u>Id.</u> at 1546.

The problem in <u>Horsley</u> was that the attorney did not provide any "specific articulable factor" that made the prospective juror unsuitable. The possibility for pretext and subterfuge in such a situation is obvious. Here, on the other hand, the attorney articulated a specific characteristic about veniremember Station: that she appeared to be a follower. Importantly, this was a trait that )) if it existed )) the district court could observe as well as could the attorneys.[14] Thus, the court had every opportunity to evaluate not only whether, and to what extent, Station indeed was a follower,[15] but, more importantly, also to judge the demeanor

---

[14] "An explanation `need not be quantifiable' provided that the intent is not race-based." <u>Moore v. Keller Indus.</u>, 948 F.2d 199, 202 (5th Cir. 1991) (quoting <u>United States v. Clemons</u>, 941 F.2d 321, 325 (5th Cir. 1991)), <u>cert. denied</u>, 112 S. Ct. 1945 (1992).

[15] One of the cases Judge Johnson cites, <u>Reynolds v. Benefield</u>, 931 F.2d 506 (8th Cir. 1991), emphasizes the importance of a potential juror's characteristics that often are evaluated <u>subjectively</u> by the viewer:

It is well to note that feelings are not always expressed in words, and, indeed, may be clearly manifested by gestures and facial expressions. A grimace or stare may express hostility or displeasure quite as clearly as words shouted across a room. Much
(continued...)

22

and, consequently, the credibility of the attorney to determine whether his proffered reason for striking Station was pretextual.

This is all that <u>Batson</u> requires.  The ultimate decision for the district court is not whether, in fact, the juror is splendidly qualified for jury service, but whether the lawyer seeking to strike that juror peremptorily is telling the truth or, instead, is engaging in purposeful racial discrimination.

The difference between the situation in <u>Horsley</u> and that in the instant case perhaps is best summarized by Judge Johnson himself:

> Hostile facial expressions and body language "can be observed in the courtroom; therefore the truth or falsity of explanations of this kind is subject to proof."  <u>Barfield v. Orange County</u>, 911 F.2d 644, 648 (11th Cir. 1990), <u>cert. denied</u>, 111 S. Ct. 2263 (1991). In contrast, an explanation based upon unsupported intuition is "not subject to observation and not subject to proof."  <u>Id.</u>

The truth <u>vel non</u> of whether Station was a "follower" was readily "subject to proof"[16]; more importantly, whether the attorney was

_____

[15](...continued)
literature may be found on interpreting "body language" as a fundamental and effective practice in the selection of a jury. <u>See, e.g.</u>, 1 S. Schweitzer, <u>Cyclopedia of Trial Practice</u> § 144 (2d ed. 1970); 5 <u>Am. Jur. Trials</u> § 65 (1966) (valuable information can be obtained by observing a juror's demeanor).  It has been noted that the "body language method" of jury selection "looks to a juror's appearance, behavior, and non-verbal responses, since these are viewed as giving a truer picture than verbal answers." T. Mauet, <u>Fundamentals of Trial Techniques</u> 32 (2d ed. 1988).  It may also be relevant to note "the juror's attitude toward the lawyer."  <u>Id.</u>

<u>Id.</u> at 512.

[16] Of course, the ultimate question is not whether Station was a "follower," or even whether she would be a suitable juror or whether "followers" generally make suitable jurors.  The ultimate question remained whether the attorney seeking to strike Station was doing so on the basis of
(continued...)

23

truthful in his stated reason for the strike also was "subject to proof." Accordingly, the reason given in the case sub judice, unlike that proffered in Horsley, comports with Batson, once that reason was accepted by a district judge who had observed the demeanor of the participants.[17]

Judge Johnson, like the district court, misconstrues Batson, which states that

> the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption )) or his intuitive judgment )) that they would be partial to the defendant because of their shared race. . . . Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirm[ing] [his] good faith in making individual selections."

476 U.S. at 97-98 (citations omitted). There is no prohibition of all intuitive judgments, but only of the specific intuitive judgment that members of a particular race are unsuited to jury service in the case at hand.

As the Court pointed out, the attorney must do more than merely assert his good faith; he "must give a `clear and reasonably specific' explanation of his `legitimate reasons' for exercising the challenges." Id. at 98 n.20 (citation omitted). The "reasonably specific explanation," "need not rise to the level

---

[16](...continued)
race. The question of whether Station actually was a follower is relevant only as a means to test whether the lawyer's assertion that she was a follower (or, for that matter, the attorney's implicit opinion that followers do not make good jurors) was pretextual.

[17] "We must accept the judge's credibility choice and affirm his finding on these facts." Lance, 853 F.2d at 1181 (affirming denial of Batson challenge).

24

justifying exercise of a challenge for cause." Id. at 97 (citation omitted). Nor is there any requirement that the attorney articulate specific facts, in regard to the potential juror, in giving his reason for exercising the peremptory strike.

In the case before us, the attorney did much more than attest to his good faith or state (as did the lawyer in Horsley) merely that he had a hunch, or intuition, about the potential juror. He gave the reasonably specific reason that the juror was a follower )) an assertion that was subject to verification, by the district judge who observed the proceedings, as to both the juror's characteristics and the attorneys' bona fides in stating the reason.

It is evident, therefore, that we do not today endorse what Judge Johnson calls "unsupported intuition" as a ground for peremptory strikes. The intuition here is supported by the observation that Station was a "follower." This was an observation that could have been challenged, for example, with the contention that Station obviously was a leader, not a follower, or the argument that white veniremembers who appeared to be followers were not struck. Thus, the attorney's explanation meets Judge Johnson's test, i.e., it is "a legitimate race-neutral explanation . . ., based upon a specific articulable fact that can be evaluated by the trial court."

Finally, we do not find it necessary to respond to Judge Johnson's charge that "[t]his is an example of result-oriented jurisprudence at its very worst." We observe only that Judge

25

Johnson would reach the very same result, i.e., as he states, to "affirm the judgment of the district court in all respects."


IV.  CONCLUSION

None of issues raised by the defendants warrants reversal. The judgment of the district court is therefore AFFIRMED.

JOHNSON, Circuit Judge, dissenting:

In my view, except for Part II.A.2, the majority's *per curiam* opinion is not only well-written but also almost entirely correct.  In Part II.A.2, however, the majority not only adopts an incorrect view of the law, it then proceeds to ignore its newly announced rule in order to affirm these two criminal convictions.  These two holdings are not only wrong, they are totally irreconcilable.  I must respectfully dissent[18].


*The Real Role of Intuition*

The majority first goes astray in deciding whether, after a *prima facie Batson* violation has been established, a district court can ever find an attorney's unsupported intuition to be a sufficient race-neutral reason for a peremptory strike.  Contrary to the majority's conclusion, the answer has to be a resounding "No."  The Eleventh Circuit long ago reached the correct answer to this same question.

---

[18]  Though I agree with the majority's conclusion that the convictions should be affirmed, I have styled this writing a "dissent in  part" to emphasize my strong disagreement with the new rule adopted by the majority.

Initially, we hold that the vague explanation offered by the prosecutor in the instant case was legally insufficient to refute a prima facie case of purposeful racial discrimination. While the reasons given by the prosecutor "need not rise to the level justifying exercise of a challenge for cause," *see [Batson v. Kentucky*, 476 U.S. 79, 97, 106 S. Ct. 1712, 1723 (1986)], the prosecutor must nevertheless "give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Id*. at 98 n.20, 106 S. Ct. at 1723 n.20 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S. Ct. 1089, 1096, 67 L. Ed. 2d 207 (1981)). The prosecutor's explanation in the present case, "I just got a feeling about him," obviously falls short of this requirement. As the *Batson* court concluded, "If [such] general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause 'would be but a vain and illusory requirement.'" *Id*. at 98, 106 S. Ct. at 1723 (quoting *Norris v. Alabama*, 294 U.S. 587, 598, 55 S. Ct. 579, 583-84, 79 L.Ed. 1074 (1935)).

*United States v. Horsley*, 864 F.2d 1543, 1546 (11th Cir. 1989); *see also Brown v. Kelly*, 973 F.2d 116, 121 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1060 (1993); *United States v. Casper*, 956 F.2d 416, 418 (3d Cir. 1992); *Reynolds v. Benefield*, 931 F.2d 506, 513 (8th Cir.), *cert. denied*, 111 S. Ct. 2795 (1991). In the instant case, as in *Horsley*, the explanation offered for striking Lula Station--that she seemed to be a follower--amounted to nothing more than a hunch or "feeling" by some of the defense attorneys. No specific, articulable factor, such as her parroting the responses of others or averting eye contact, was advanced that gave rise to this intuitive leap. Thus, the district court did not err in finding that this explanation was legally insufficient.

Unfortunately, the majority reaches a different conclusion-- holding instead that a *prima facie* case of discrimination can be rebutted by intuition alone. According to the majority opinion,

27

this Court has repeatedly upheld peremptory challenges "based upon intuition and other objectively unverifiable considerations."  This assertion simply cannot be squared with the actual holdings of any of this Court's previous decisions. What this Court has held is that it is permissible for the process of choosing a jury to be influenced by the "intuitive assumptions" of the attorneys.  *United States v. Lance*, 853 F.2d 1177, 1181 (5th Cir. 1988).  However, <u>in every single case cited by the majority</u>, the intuitive assumptions of the attorneys accepted by various courts have been based upon <u>specific articulable factors</u> that were either disclosed by the prospective jurors or observed in the courtroom.[19]  Not one of the cases

[19] *See Polk v. Dixie Ins. Co.*, 972 F.2d 83, 85-86 (5th Cir. 1992) (peremptory strike based upon venireman's lack of eye contact), *cert. denied*, 113 S. Ct. 982 (1993); *United States v. Hinojosa*, 958 F.2d 624, 631-32 (5th Cir. 1992) (failure to complete high school); *United States v. Clemons*, 941 F.2d 321, 324 (5th Cir. 1991) (age, dress, hairstyle); *United States v. Roberts*, 913 F.2d 211, 214 (5th Cir. 1990) (disinterested demeanor, inattentiveness, involvement in political campaign of potential defense witness, statement that potential juror would not accept tape recordings as evidence, familiarity with a named defendant), *cert. denied*, 111 S. Ct. 2264 (1991); *United States v. De La Rosa*, 911 F.2d 985, 990 (5th Cir. 1990) (employment with church affiliated agency), *cert. denied*, 111 S. Ct. 2275 (1991); *United States v. Romero-Reyna*, 889 F.2d 559, 561 (5th Cir. 1989) (employment as pipeline operator), *cert. denied*, 494 U.S. 1084 (1990); *United States v. Moreno*, 878 F.2d 817, 820-21 (5th Cir.) (hostility toward police officers, age, marital status, unemployment, previous jury service, employment as commercial artist), *cert. denied*, 493 U.S. 979 (1989); *United States v. Terrazas-Carrasco*, 861 F.2d 93, 95 n.1 (5th Cir. 1988) (same last name as someone previously convicted by prosecutor, age, eye contact, body language); *United States v. Lance*, 853 F.2d 1177, 1180-81 (5th Cir. 1988) (age, marital status, length of residency in the community, eye contact, demeanor); *United States v. Cartlidge*, 808 F.2d 1064, 1070-71 (5th Cir. 1987) (previous convictions, age, marital status, employment, acquaintance with
(continued...)

28

cited by the majority can possibly be read to stand for the proposition that a mere hunch by an attorney, with nothing more, can ever be a sufficient race-neutral reason for a peremptory strike.  No support for the majority's position can be found in any reported case in the Fifth Circuit or, for that matter, in any other circuit since the day *Batson* was handed down.[20]  In every single case dealing with intuition or "intuitive assumptions," any subjective judgments found to be acceptable were based upon specific articulable factors or observations that were subject to proof in the courtroom.

In short, the majority's conclusion that unsupported

---

[19](...continued) defense counsel).

[20]  *See, e.g.*, *Moore v. Keller Indus., Inc.*, 948 F.2d 199, 202 (5th Cir. 1991) (age, familial relationships, appearance during questioning, responsiveness, background knowledge), *cert. denied*, 112 S. Ct. 1945 (1992); *United States v. Forbes*, 816 F.2d 1006, 1009 (5th Cir. 1987) (legal troubles of family members, body language, hostility toward prosecutor); *see also United States v. Hughes*, 970 F.2d 227, 230 (7th Cir. 1992) (criminal record of cousin, lack of employment, children out of wedlock); *Dunham v. Frank's Nursery & Crafts, Inc.*, 967 F.2d 1121, 1123 (7th Cir. 1992) (employment as hairdresser, eye contact, familiarity with two potential defense witnesses); *Williams v. Chrans*, 957 F.2d 487, 489 (7th Cir.) (answers to jury questionnaire, location and nature of employment), *cert. denied*, 113 S. Ct. 595 (1992); *United States v. Williams*, 934 F.2d 847, 849 (7th Cir. 1991) (statements during voir dire, familiarity with the case, status as young, single mother); *United States v. Briscoe*, 896 F.2d 1476, 1488 (7th Cir.) (previous employment at penal facility, history of criminal prosecutions, residence geographically close to defendants, victim of earlier armed violence where no charges were brought), *cert. denied*, 498 U.S. 863 (1990); *United States v. Davis*, 871 F.2d 71, 72 (8th Cir. 1989) (age, marital status, employment, residence, failure to answer questions on voir dire); *United States v. Clemons*, 843 F.2d 741, 748 (3d Cir.) (age, marital status), *cert. denied*, 488 U.S. 835 (1988).

intuition is a legitimate race-neutral explanation for a peremptory strike is absolutely without support in reported case law.  The majority opinion also creates a square and irreconcilable conflict with the Eleventh Circuit[21] and ignores case law in the Second, Third, and Eighth Circuits strongly suggesting that intuition can never be a legitimate race-neutral explanation.[22]  Yet in reaching its remarkable conclusion, the majority never even acknowledges that anything unusual is afoot. Evidently everyone else is out of step except the majority.

Although the majority opinion fails to appreciate the distinction, there is a world of difference between subjective "assumptions" based upon specific articulable factors and pure hunches or "gut feelings."  As our sister circuit has explained, a strike based upon the attorney's perception of facial expressions or body language is distinguishable from a strike based upon intuition alone.  Hostile facial expressions and body language "can be observed in the courtroom; therefore the truth or falsity of explanations of this kind is subject to proof." *Barfield v. Orange County*, 911 F.2d 644, 648 (11th Cir. 1990),

---

[21] *See United States v. Horsley*, 864 F.2d 1543, 1546 (11th Cir. 1989).

[22] *See Brown v. Kelly*, 973 F.2d 116, 121 (2d Cir. 1992) (quoting statement from *Horsley* that mere feeling is not sufficient race-neutral explanation), *cert. denied*, 113 S. Ct. 1060 (1993); *United States v. Casper*, 956 F.2d 416, 418 (3d Cir. 1992) (quoting same statement from *Horsley*); *Reynolds v. Benefield*, 931 F.2d 506, 513 (8th Cir.) (accepting explanation for peremptory challenge based upon subjective judgment but noting that challenge was not purely subjective because it was based upon specific observations of venireman's behavior and demeanor in the courtroom), *cert. denied*, 111 S. Ct. 2795 (1991).

*cert. denied*, 111 S. Ct. 2263 (1991). In contrast, an explanation based upon unsupported intuition is "not subject to observation and not subject to proof." *Id*.

The majority incorrectly asserts that the striking attorney's assumption that Ms. Station was a follower is itself a specific articulable factor. However, this is not a fact, but rather a subjective judgment. Moreover, the majority misconstrues the relevant inquiry when it states that the assumption that Ms. Station was a follower is subject to proof. It is not the appraisal that Ms. Station was a follower that must be subject to proof, but rather it is the specific, articulable basis giving rise to that judgment that must be subject to proof. All that was provided here was an intuitive judgment with no articulable factor giving rise to that appraisal.

To further illustrate the important distinction between subjective assumptions based on articulable factors and pure unsupported intuition, consider the case of *United States v. Romero-Reyna*, 889 F.2d 559 (5th Cir. 1989), *cert. denied*, 494 U.S. 1084 (1990). This case features what has to be one of the most ridiculous explanations ever offered for a peremptory strike. In *Romero-Reyna*, the prosecutor explained that he struck a potential juror who worked as a pipeline operator because he never accepted a juror whose occupation began with a "P." *Id*. at 560. Although such an explanation is very likely to be found pretextual, it would be a legitimate race-neutral explanation. An attorney is allowed to make the intuitive assumption that

31

people in professions that begin with the letter "P" will be prejudiced against his case. This assumption, however ridiculous it may seem, is based upon a specific articulable fact that can be evaluated by the trial court--namely, that the veniremember's occupation began with the letter "P." Further, there is also the possibility that the opposing attorney would be able to rebut that explanation by pointing out white veniremen whose occupations also begin with "P."[23]

On the other hand, if intuition or a "gut feeling" alone is a sufficient race-neutral explanation, how can either the opponent or the trial court ever establish that the proffered explanation is pretextual? The majority assures us that this is really no different from other credibility choices that finders of fact must make. If this is true, then why did the Supreme Court in *Batson* specifically disallow a prosecutor's assertion of good faith as a race-neutral reason? Such an assertion would also require the same sort of "credibility choice" that so inspires the confidence of the majority in the instant case. The answer to this question should be obvious. The *Batson* Court rejected "good faith" as a legitimate explanation for the very same reason that this Court should reject unsupported intuition: without some sort of articulable basis for the strike, no one-- whether finder of fact, opponent, or appellate court--has any way

---

[23] In fact, in *Romero-Reyna*, the district court rejected the prosecution's reliance on the "P rule" for just this reason. The peremptory challenge was upheld only after the prosecution also explained that the strike was also based upon the prevalence of marijuana use among pipeline workers. *Id*. at 561.

to decide whether the attorney is telling the truth. The Supreme Court has recognized that allowing such an unprovable explanation would make the *Batson* holding "'a vain and illusory requirement.'" *Batson*, 476 U.S. at 98 (quoting *Norris v. Alabama*, 294 U.S. 587, 598 (1935)). The only real way to rebut such an explanation based on a "gut feeling" would be to show a history of similar "gut feelings" about minority veniremen. Here, with one stroke of the pen, the majority has effectively obliterated *Batson* and returned this Circuit to the days of *Swain v. Alabama*, 380 U.S. 202 (1965).

*Selective Application?*

The majority's holding--that an unsupported "gut feeling" is sufficient to explain a peremptory strike--is bad enough. What makes this decision even worse is that the majority then proceeds to ignore its own holding in order to affirm these two criminal convictions.

The main reason given by defense counsel for striking Lula Station was that she seemed to be a "follower" instead of an independent thinker. No specific basis for this impression was ever articulated by the defendants' attorneys, and this explanation was flatly rejected by the district court. Contrary to the assertions in the majority opinion, it is clear from the record that the district court felt that such a reason could <u>never</u> be a legitimate race-neutral explanation for a peremptory strike. The district court clearly stated that the "intuitive

33

judgment of the defendant's counsel" could not be considered a race-neutral explanation.[24]  Also, the district court specifically held that the explanation that Ms. Station was a "follower" was not a valid reason for excluding a prospective juror.[25]  If, as the majority now holds, unsupported intuition is a legitimate race-neutral reason for a peremptory strike, it would seem obvious that the district court committed reversible error.  *See United States v. Broussard*, 987 F.2d 215, 221 (5th Cir. 1993) ("The denial or impairment of the right to exercise peremptory challenges is reversible error without a showing of prejudice.").

Surprisingly, however, the majority affirms the convictions

---

[24]  The district court stated:

> Some things that are not considered to be neutral acts are as follows:  denial of discriminatory motive, affirmance of his/her good faith of the defendant, nor intuitive judgment of the defendant's counsel will serve to form the non-discriminatory basis upon which the peremptory challenges have to be based.

Record, Vol. 13 at 159.

[25]  In language also quoted by the majority opinion, the district court held

> On Lula Station, the court cannot see any reason.  Just telling the court that she is a follower clearly violates what the Supreme Court has stated that that is not a reason for merely excusing a juror.  And the court finds that insofar as Ms. Station is concerned, the court finds that she was excluded solely because of her race, and therefore makes such a finding.

Record, Vol. 13 at 166.  It is abundantly clear from this statement--and the rest of the district court's holding quoted in the majority opinion--that the district court felt that the defendant's explanation for striking Ms. Station was not a race-neutral explanation.

34

and reaches the remarkable conclusion that the district court did "exactly as the law requires." While I would agree that the district court applied the law as it should be, it is obvious that the district court did not apply the law adopted today in the majority's opinion. The majority cannot have it both ways. If unsupported intuition is sufficient to rebut a *prima facie* case of race discrimination in the exercise of peremptory strikes, then the district court committed error and these convictions should be reversed. There is simply no way to reconcile the majority's holding with its decision to affirm the convictions of the defendants. This is an example of result-oriented jurisprudence at its very worst.

CONCLUSION

This writer would hold that an explanation based upon unsupported intuition can never be a legitimate race-neutral explanation for a peremptory strike, and accordingly, would affirm the judgment of the district court in all respects. Because the majority not only adopts an incorrect view of the law, but also misapplies its own rule to the facts of this case, I must dissent.