LEE, P.J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. On March 5, 2003, a jury in the Sunflower County Circuit Court found Antwon Cortes Williams guilty of aggravated assault. The jury also found Williams not guilty of armed robbery. Williams was sentenced as an habitual offender to serve twenty years in the custody of the Mississippi Department of Corrections. Aggrieved, Williams now appeals to this Court asserting the following issues: (1) an elderly juror should not have been allowed to serve on the jury; (2) the trial judge erred in denying Williams’s motion for a continuance; (3) the trial judge erred in refusing a lesser-included offense instruction of simple assault; and (4) the cumulative effect of these errors denied Williams a fair trial.
FACTS
¶ 2. On January 15, 2002, Williams and three other men entered Perry Allred’s place of business. Williams had been there earlier playing cards, and all of the men had been to Allred’s several times before. Allred’s business was described as a juke joint consisting of an arcade, a pool table, and a slot machine. Williams and his friends left Allred’s around 9:00 p.m., but returned sometime after midnight. Allred testified that as one of the men tried to distract him, another man hit him on the back and head with a tire tool three or four times. One of the men then went through Allred’s pockets, taking some cash, a phone, and a knife. Allred also testified that he remembered Williams holding him down on the ground. Allred was then able to grab a pool stick and hit one of the men, after which all four men fled.
¶ 3. During his testimony, Allred stated that he knew it was Williams who was holding him down because he recognized Williams’s voice. Allred also said that he saw Williams’s face as the men departed. Williams testified that he was with his family on the night in question. In addition to serious head injuries, Allred’s front teeth were knocked out and his lip was cut in two places.
DISCUSSION OF ISSUES
I. DID THE TRIAL JUDGE ERR IN KEEPING AN ELDERLY JUROR ON THE JURY?
¶ 4. In his first issue, Williams claims that the trial judge erred in keeping a seventy-seven year old man on the jury. During voir dire, Williams, a black male, struck the first five white jurors. The State objected pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and the trial judge ordered Williams to give race-neutral reasons for striking the white jurors. Williams stated that juror nine, Charles Waldrup, was seventy-seven years old and knew a physician testifying for the State. In rebuttal, the State claimed that Waldr-up’s age and his acquaintance with the witness were pre-textural. The trial judge agreed with the State, namely because Waldrup stated that “I just know him” and Williams had already accepted another juror who had actually worked with the same witness.
¶ 5. The Batson decision provides procedural directives for the trial court to follow in detecting and disallowing the practice of using peremptory challenges to remove members of an identified racial group from jury service based upon nothing more than their racial identification. To successfully assert a Batson claim, the following procedure must occur:
First, the defendant must make a prima facie showing that the prosecutor has *1236 exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
Berry v. State, 728 So.2d 568(¶ 11) (Miss.1999) (citing Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). In Georgia v. McCollum, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), the Supreme Court extended Batson to forbid the defendant as well from engaging in intentional racial discrimination in the exercise of peremptory challenges.
¶ 6. In the case sub judice, the State satisfied the first prong of the three-step analysis by pointing out that Williams had used his first five peremptory strikes against white jurors, thereby giving rise to a reasonable inference of purposeful discrimination. Williams then offered a race-neutral reason for striking Waldrup, i.e., he was seventy-seven years old and knew a witness. Our determination then turns on whether the trial judge abused his discretion in finding that Williams’s race neutral-explanation was pretextural and that Waldrup was struck because of his race.
¶ 7. Our standard of review requires a reversal only if the factual findings of the trial judge are “clearly erroneous or against the overwhelming weight of the evidence.” Tanner v. State, 764 So.2d 385(¶ 14) (Miss.2000). Any determination made by a trial judge under Batson is accorded great deference because it is “based, in a large part, on credibility.” Coleman v. State, 697 So.2d 777, 785 (Miss.1997). The term “great deference” has been defined in the Batson context as meaning an insulation from appellate reversal of any trial findings which are not clearly erroneous. Lockett v. State, 517 So.2d 1346, 1349 (Miss.1987).
¶ 8. The record reflects the following colloquy regarding the explanation for striking Waldrup:
MR. KELLY: Charles Waldrup, No. 9' — I don’t know — he’s 77. He knows Dr. Aquino. Those are the reasons for him....
THE COURT: Are you saying Waldr-up’s age is—
MR. KELLY: Yes, sir.
MS. BRIDGES: Object, Your Honor.
MR. KELLY: And the fact that he knows the State’s witness.
THE COURT: Knows the State witness.
MR. KELLY: Dr. Aquino.
THE COURT: What does the State say about those?
MS. BRIDGES: You want to finish them.
THE COURT: I’m sorry. Is there another one?
MS. BRIDGES: Michael Leach.
MR. KELLY: The only thought about that was he’s of the same general age, I believe, of the victim. They look like the same age anyway. The guy is 37 years old, and I just thought he might be — lean towards the guy’s side — lean toward the victim’s side since they’re of similar age. That’s it.
THE COURT: Well, this is my ruling. I don’t think the age is the thing, and I find that knowing the doctor is pretex-tural because Mildred Lee knows the doctor, and she said she worked with him, and you left her on there. So I’m going to put — I’m going — I don’t know what the word for this is.
MS. BRIDGES: Deny the challenge.
*1237 THE COURT: I’m going to revoke D-3, and I’m going to revoke D-5 also, unless you got something else, because Juror No. 4, Fredrick Hannah, is also the same age as the victim. He’s 38. If that’s the reason, you left him on there. So I find that the one for D-5, Michael Leach, is pretextural, and the one for Waldrup. I’m going to leave them on there....
¶ 9. Williams argues that age is a race-neutral reason for peremptorily challenging a venire member. We agree, but the assertion of age, like anything else, can be pre-textural. This Court has stated that “a party may attempt to refute the other party’s race-neutral reason by ‘pointing out that similar claims can be made about non-excluded jurors.’ ” McFarland v. State, 707 So.2d 166(¶ 17) (Miss.1997) (citing U.S. v. Bentley-Smith, 2 F.3d 1368, 1373-74 (5th Cir.1993)).
¶ 10. Here, the trial judge determined that the assertion of age as the reason for striking Waldrup was pretextural. In reaching his decision, the trial judge considered the fact that Williams’s counsel also offered age as the reason for striking venireman Michael Leach. As reflected in the above colloquy, Williams’s counsel struck Leach allegedly because Leach was approximately the same age as the victim, and counsel thought the age similarities might cause Leach to sympathize with the victim. The trial judge pointed out that counsel had left Fredrick Hannah on the jury and that Hannah was also the same age as the victim.[1]
¶ 11. Williams does not challenge the trial court’s denial of his peremptory strike of Leach although the trial court found that age, as the offered reason for striking Leach, was pretextural. Apparently, the trial court reasoned that if age, as the reason for striking the younger venireman, was pretextural, age, as the reason for striking the older venireman Waldrup, was also pretextural. Making such a nexus can be problematic, for we can visualize some instances where age, as a reason for striking a younger venire member, may be pretextural but not so for an older venire member because of the maturity possessed, as well as the infirmities sometimes borne, by older persons. However, given the fact that one of the reasons for striking Waldrup — he knew Dr. Aquino— was clearly shown to be pretextural and the other reason, age, was also found to be pretextual in the case of venireman Leach, we, in light of the deference which we must give to trial judges’ factual findings in Batson challenges, are not willing to find that the trial court erred in finding that age, though being a race-neutral reason, was also pretextural in this case.
II. DID THE TRIAL JUDGE ERR IN DENYING WILLIAMS’S MOTION FOR A CONTINUANCE?
¶ 12. In his second issue, Williams contends that the trial judge erred in denying his motion for a continuance. On the first day of trial the State handed Williams two signed statements made by James Wilson two months before trial. James Wilson was supposedly involved in the robbery and assault of Allred. The standard for review for a grant or denial of a motion for continuance is within the discretion of the trial judge. Smiley v. State, 815 So.2d 1140(¶ 14) (Miss.2002). The appellate court will not reverse the trial judge unless the ruling resulted in manifest injustice. Id.
¶ 13. The trial judge read the statements and concluded that “I don’t see *1238 anything in this that would indicate that he would have any evidence that would have anything to do with your client.” As voir dire had already occurred, the trial judge suggested that if Williams came up with something important concerning the statements he should address it in a posttrial motion. Furthermore, the State also received the statements the morning of the trial, but did not use Wilson as a witness in their case against Williams. We cannot find that the trial judge’s denial of Williams’s motion for continuance resulted in manifest injustice.
III. DID THE TRIAL JUDGE ERR IN REFUSING A LESSER-INCLUDED OFFENSE INSTRUCTION OF SIMPLE ASSAULT?
¶ 14. In his third issue, Williams claims that the trial judge erred in refusing to grant a lesser-included offense instruction of simple assault. In reviewing the denial of a jury instruction, the appellate court must consider not only the denied instruction but all of the instructions which were given to ascertain if error lies in the refusal to give the requested instruction. See Coleman v. State, 697 So.2d 777, 782 (Miss.1997). “A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in another instruction, or is without foundation in the evidence.” Humphrey v. State, 759 So.2d 368(¶ 33) (Miss.2000). Furthermore, “[l]esser-in-eluded offense instructions should not be indiscriminately granted. Rather, they should be submitted to the jury only where there is an evidentiary basis in the record therefor.” Lee v. State, 469 So.2d 1225, 1230 (Miss.1985).
¶ 15. Mississippi Code Annotated Section 97-3-7(2) (Supp.2003), states that “[a] person is guilty of aggravated assault if he ... (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.... ” In denying Williams’s request for a jury instruction on simple assault, the trial judge found that the evidence showed the assault to be intentional, not careless or negligent. The trial judge also stated that “I just don’t see this as simple assault.” Williams and his cohorts purposefully inflicted serious injury to Allred by means of a tire tool and then proceeded to rob his business. We cannot find that the trial judge erred in denying Williams request for a simple assault jury instruction.
IV. DID THE CUMULATIVE EFFECT OF THESE ERRORS DENY WILLIAMS A FAIR TRIAL?
¶ 16. In his last issue, Williams argues that the cumulative effect of the above errors denied him a fair trial. Finding Williams’s arguments to be without merit, we find no cumulative error that would necessitate a reversal. Therefore, we affirm.
¶ 17. THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE AS AN HABITUAL OFFENDER TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.

. We know that Hannah is black because when Williams’s counsel struck the five white jurors, the prosecutor remarked that "the defendant has excluded every white juror from the panel.” This assertion was not challenged by Williams's counsel.