UNITED STATES of America,
Plaintiff–Appellee,

v.

Marvin Jerome HORSLEY, Earl Howard
McDonald, Defendants–Appellants.

No. 86–3316.

United States Court of Appeals,
Eleventh Circuit.

Feb. 6, 1989.

Samuel R. Mandelbaum, Tampa, Fla., for
Horsley.

Timothy Allen Hunt, Carlton, Fields,
Ward, Emmanuel, Smith & Cutler, Tampa,
Fla., for McDonald.

Whitney L. Schmidt, Asst. U.S. Atty.,
Tampa, Fla., for U.S.

Before TJOFLAT, VANCE and COX,
Circuit Judges.

PER CURIAM:

I.

In this appeal, Marvin Jerome Horsley
and Earl Howard McDonald challenge their
convictions for possession of cocaine with
intent to distribute, *see* 21 U.S.C.
§ 841(a)(1) (1982), on two grounds. One of
the grounds is frivolous [1] and is not worthy
of discussion. The other, based on *Batson
v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90
L.Ed.2d 69 (1986), has merit and requires
that we remand the case to the district
court for further proceedings.

The appellants, who are black, contend
that during the selection of the jury that
tried the case, the prosecutor purposefully
discriminated against them by peremptorily
challenging the only black on the venire.
They therefore claim that the district court
denied them the equal protection of the

---

1. Appellants argue that the district court erred
in refusing to require the prosecutor to reveal
the identity of the Government's confidential
informant. The Government contends that the
informant in this case was a "mere tipster," who
neither directly participated in nor witnessed

laws as guaranteed by the due process clause of the fifth amendment [2] when it overruled their objection to the seating of the jury.

The jury was selected in the following manner. First the court qualified a venire of thirty-two persons. Only one of the thirty-two veniremen, Clarence Beckham, was black. The court then examined the venire and, when it finished, invited counsel to undertake their own additional examination of the veniremen. The prosecutor declined the invitation; defense counsel accepted it and made a brief inquiry of several veniremen. The court thereafter entertained challenges for cause; none were made.

The parties exercised their peremptory challenges at side bar; the Government had six challenges, and the defendants had ten. The parties presented their challenges—one by one with the Government proceeding first—by addressing the twelve veniremen seated in the jury box; as strikes were made, the challenged venireman was replaced by the next venireman in line (from the twenty not in the box).

The Government struck Clarence Beckham with its second peremptory challenge. At this point, the defense expressed concern that appellants were to be tried by an all-white jury and objected to what appeared to be a racially discriminatory use of the peremptory challenge by the prosecutor. Accordingly, defense counsel asked the court to request that the prosecutor give his reasons for exercising his peremptory challenge against Beckham. Since Beckham's answers to the district court's questions, during *voir dire*, did not differ in substance from those provided by white jurors whom the prosecutor did not strike,[3] the court ruled that the defendants were "entitled to something on the record." The obvious implication of the court's action is that it inferred from the circumstances that the prosecutor had struck Beckham because he was black in order purposefully to deprive appellants of the possibility of having any blacks impaneled to try the case. The court then requested the prosecutor to set forth a non-racially discriminatory reason for striking the black juror. The prosecutor responded, "I don't have any particular reason. I just got a feeling about him as I have about Mr. Gonzalez and several others." [4]

the transaction, and that the Government was therefore under no obligation to reveal his identity. *See Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). Assuming, nonetheless, that the informant's involvement was more than that of a mere tipster, we still find no error in the district court's refusal to require the disclosure of his identity because the record contains no indication that his testimony would be helpful to the defense. On the contrary, the appellants' motion seeking disclosure suggests that the informant's testimony would be damaging to the defense. Under these circumstances, disclosure was not required. *Id.* at 62–64, 77 S.Ct. at 628–30.

In addition to challenging their conviction, appellants also challenge their sentences. They contend that the district court gave them the maximum sentence permissible under the statute—15 years in prison—because they exercised their right to go to trial rather than pleading guilty. We can find nothing in the court's colloquy with the appellants prior to trial, nor in the court's colloquy during the sentencing of the appellants, to indicate in any way that the appel-

lants were either being pressured to plead guilty or being punished for not having done so. We therefore reject this claim as well.

2. The right to the equal protection of the laws expressed in the fourteenth amendment has been found by implication in the due process clause of the fifth amendment, which itself contains no equal protection clause. *See Johnson v. Robison*, 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 1164 n. 4, 39 L.Ed.2d 389 (1974).

3. Like many of the white jurors, Beckham testified that he was employed, his wife was a housewife, his child was enrolled in college, neither he nor any of his family members or friends had ever been subject to criminal proceedings, he had never been subject to an IRS audit, he had never been involved in a civil law suit, and he did not have any friends in the field of law enforcement, the legal profession, or the medical profession.

4. In contrast to Beckham, whose answers to the judge's questions were the same as those provid-

Before swearing in the jury, the district court revisited the defendants' objection to the striking of Beckham in light of the Supreme Court's opinion in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986), which had been handed down the preceding day. The court asked the prosecutor if he had anything to add to his previous justification for striking Beckham, and the prosecutor answered in the negative. Upon reconsideration, the district court retreated from its earlier position and reversed its earlier ruling that the circumstances permitted an inference of purposeful discrimination. The court did so because it interpreted *Batson* as holding that a prima facie case of purposeful discrimination can be established only when the prosecutor has engaged in a pattern of peremptory strikes against a minimum of three or four black veniremen.[5] Because such a pattern could not be established in the case at hand—the venire contained only one black juror—the court concluded that the prosecutor's use of the peremptory challenge against Beckham did not rise "to the stature of a constitutional violation." Horsley and McDonald contend that the district court misconstrued the requirements of *Batson.* We agree.

## II.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court overruled *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), to the extent that it had held that a prosecutor's exercise of peremptory challenges in a given case, standing alone, could not permit an inference of purposeful discrimination. *See Batson,* 476 U.S. at 93–96, 106 S.Ct. at 1721–22.[6] The *Batson* court reasoned that *Swain's* requirement had "placed on defendants a crippling burden of proof" and had rendered prosecutors' peremptory challenges "largely immune from constitutional scrutiny." *Id.* at 92–93, 106 S.Ct. at 1720–21 (citation omitted). Under *Batson's* analysis, a defendant who belongs to a cognizable racial group may establish a prima facie equal protection violation by showing that the prosecutor exercised peremptory challenges against members of the defendant's race and that this "and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.* at 96, 106 S.Ct. at 1723. Once a prima facie case is established, the burden shifts to the prosecutor to come forward with a racially "neutral explanation related to the particular case to be tried." *Id.* at 98, 106 S.Ct. at 1723 (citation omitted). The trial court then must decide on the basis of all the evidence whether a denial of equal protection will result if it overrules the defendant's objec-

ed by white jurors whom the prosecutor did not strike, prospective juror Daniel Gonzalez testified that a member of his family had been convicted of a crime and served time in prison, that he himself had once been subject to a criminal charge, that he had been a witness in a trial, and that he had several friends who were members of the legal and medical professions.

**5.** In explaining its decision, the district court stated:

In view of the Supreme Court decision which has come down just yesterday with regard to prosecutorial peremptory challenge of black persons, I wanted our record clear there was only one black person among our thirty-five people [on the venire], and that black person was struck by the prosecution. There was no more than one black person, so as far as establishing a pattern during this jury selection process, the Court finds no

cause. There was only one person, which I think is a significant factor. If there were more than one person and both of them were struck, or three people, or four people, then we might be able to establish a pattern.

. . . .

I don't think that on the basis of what is in this case there is any pattern indicated that this Court could make a finding by design that the prosecutor has eliminated this black person, Mr. Beckham, from the Jury.

**6.** The district court was correct in revisiting appellants' objection to the prosecutor's use of the peremptory challenge against Beckham in light of the *Batson* decision. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) (*Batson's* holding is to be applied to all cases "pending on direct review or not yet final" at the time *Batson* was decided.).

tion to the prosecutor's exercise of the challenge. *Id.* at 98, 106 S.Ct. at 1723–24.

■ Initially, we hold that the vague explanation offered by the prosecutor in the instant case was legally insufficient to refute a prima facie case of purposeful racial discrimination. While the reasons given by the prosecutor "need not rise to the level justifying exercise of a challenge for cause," *see Batson,* 476 U.S. at 97, 106 S.Ct. at 1723, the prosecutor must nevertheless "give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Id.* at 98 n. 20, 106 S.Ct. at 1723 n. 20 (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)). The prosecutor's explanation in the present case, "I just got a feeling about him," obviously falls short of this requirement. As the *Batson* court concluded, "If [such] general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause 'would be but a vain and illusory requirement.'" *Id.* at 98, 106 S.Ct. at 1723 (quoting *Norris v. Alabama,* 294 U.S. 587, 598, 55 S.Ct. 579, 583–84, 79 L.Ed. 1074 (1935)).

■ As noted above, after the prosecutor failed to articulate a sufficient explanation for striking Beckham, the district court reversed its earlier ruling that the circumstances permitted an inference that the prosecutor had purposely discriminated against the appellants by striking the one juror who was of their same race, or in the vernacular of *Batson,* that the appellants had established a prima facie case of purposeful discrimination. The district court's action was based on the erroneous belief that a prima facie case of purposeful discrimination under *Batson* could be established only through evidence of a systematic discriminatory use of peremptory challenges. While *Batson* noted that a pattern of strikes against black jurors might be a relevant circumstance to consider, the Court stated that the example was "merely illustrative." *Id.* at 97, 106 S.Ct. at 1723. We have held that the number of black jurors struck is not dispositive to the issue of whether a prima facie case has been established. *See United States v. David,* 803 F.2d 1567, 1567 (11th Cir.1986). Accordingly, we hold that the district court in the instant case erred in foreclosing any consideration of other factors which might have supported an inference of discriminatory purpose, the most obvious of which was the prosecutor's disparate treatment of veniremen who were similar in relevant aspects except race.

We therefore vacate the district court's decision that appellants did not establish a prima facie showing of racial discrimination in the prosecutor's use of his peremptory challenges, and remand for further proceedings consistent with this opinion. If the district court, after considering all of the relevant circumstances, decides that the relevant evidence establishes, prima facie, purposeful discrimination, appellants must receive a new trial.

VACATED and REMANDED.