NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAY 13 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JULIE HARPER,<br><br>     Petitioner-Appellant,<br><br> v.<br><br>MOLLY HILL, Acting Warden; XAVIER BECERRA,<br><br>     Respondents-Appellees. | No. 21-55636<br><br>D.C. No.<br>3:18-cv-01888-GPC-MDD<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted February 10, 2022
Pasadena, California

Before:  SCHROEDER, LIPEZ,[**] and LEE, Circuit Judges.

Julie Harper appeals the district court's denial of her 28 U.S.C. § 2254 habeas

petition challenging her state conviction and sentence for second degree murder and

related firearm enhancements.  Harper argues the state prosecutor used preemptory

---

  [*]  This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

  [**]  The Honorable Kermit V. Lipez, United States Circuit Judge for the
First Circuit, sitting by designation.

challenges to excuse potential male jurors in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and we affirm.

"We review de novo the district court's decision to grant or deny a petition for writ of habeas corpus." *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003). At the same time, this court's review is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the AEDPA, a federal court may grant a writ of habeas corpus only if the state court adjudication: (1) "was contrary to clearly established federal law as determined by the Supreme Court," (2) "involved an unreasonable application of such law," or (3) "was based on an unreasonable determination of the facts in light of the record before the state court." *Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018). When we apply this AEDPA standard to our review of a *Batson* claim, we end up with a standard of review that is "doubly deferential." *Sifuentes v. Brazelton*, 825 F.3d 506, 518 (9th Cir. 2016). This is because the AEDPA requires us to defer to the state appellate court's "determination of the facts." *Id.* Meanwhile, *Batson* requires the state appellate court to defer to the trial court's "determination of the prosecutor's credibility." *Id.* Accordingly, "unless the state appellate court was objectively unreasonable in concluding that a trial court's credibility determination was supported by substantial evidence," we

must uphold the state appellate court's decision. *Id.* (quoting *Briggs v. Grounds*, 682 F.3d 1165, 1170 (9th Cir. 2012)).

Harper shot and killed her husband but claimed self-defense. The jury deadlocked on second-degree murder and manslaughter at her first trial but she was later convicted in a retrial. She argues that the state prosecutor unlawfully struck male jurors in violation of *Batson* because he presumed that male jurors would be more receptive to her self-defense theory.

Reviewing the prosecutor's gender-neutral explanations "in light of the evidence in the record," we find the state appellate court was not "objectively unreasonable in upholding the trial court's determination" that Harper did not carry her burden of proving purposeful discrimination against male jurors J.Z., S.E., W.B., and M.S. *Sifuentes*, 825 F.3d at 515, 518.

J.Z.: The prosecutor stated he struck J.Z. because he was "a robotics engineer" and "a science-heavy person" who "quarreled" with the prosecutor on the concept of circumstantial evidence. The prosecutor also stated he had concerns about J.Z.'s "ability to just use plain old common sense." The trial court accepted these gender-neutral justifications and even stated that "because of [J.Z.'s] quarrel with the circumstantial evidence," the prosecutor's excusal "was clearly no surprise." After reviewing the prosecutor's gender-neutral explanations in light of the evidence in the record, we conclude the state appellate court was not objectively unreasonable

3

in upholding the trial court's determination as to J.Z.

S.E.: The prosecutor struck S.E. on the grounds that he was a professor of psychology, and he anticipated there would be two or more psychologists or psychiatrists testifying at trial. The prosecutor stated he did not want a professor of psychology on the jury "based on a feeling he may be very liberal," particularly in a case "dealing with a claim by the defendant that she was being raped and being abused." After reviewing the prosecutor's gender-neutral explanations in light of the evidence in the record, and conducting a comparative juror analysis between S.E. and an impaneled female juror who Harper claims also had a background in psychology, we conclude that the state appellate court was not objectively unreasonable in upholding the trial court's determination. S.E. was a psychology professor who previously worked as a child abuse investigator. In contrast, the female juror worked for a commercial real estate firm, even though she studied psychology in college. These are material differences. *Cf. Sifuentes*, 825 F.3d at 527 (finding prosecutor could have been reasonably concerned about impaneling a juror with law degree and not harbor the same concerns about a juror with undergraduate legal training).

W.B.: The prosecutor explained that he struck prospective juror W.B. because he believed W.B. was either a drug user or an alcoholic. The prosecutor stated the juror was a "larger individual," "disheveled," "sloppy," and "disproportionately

4

sweating." He stated W.B. had "teeth rot" and had "worn the same sweatpants every day." The prosecutor also stated the juror was "a retired letter carrier" and that a retired letter carrier "is not the type of person a prosecutor would typically find favorable." The trial court challenged some of these observations, including suspected drug or alcohol use, rotting teeth, casual wear, and sweating. But the trial court did not reject all the prosecutor's justifications, including W.B.'s weight and former employment as a postal worker.

Harper argues "W.B.'s weight is not a valid basis for a challenge." But as the district court observed, "it is possible that the prosecutor harbored stereotypes about people who are overweight," as evidenced by the prosecutor's other remarks regarding W.B.'s appearance, including that W.B. was a "sloppy individual." Although perhaps problematic, a prosecutor's use of erroneous stereotypes does not compel the conclusion that the stereotypes were pretext for gender discrimination. As the U.S. Supreme Court has noted, "*all* peremptory challenges are based on stereotypes of some kind, expressing various intuitive and frequently erroneous biases." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 142 n.14 (1994) (emphasis in original).

Harper also argues that although a person's profession can be a legitimate reason for challenging a juror, the prosecutor did not state why being a former postal worker would make W.B. an undesirable juror for the prosecution in this case. *See*

*Batson*, 476 U.S. at 98 (stating a prosecutor "must articulate a neutral explanation related to the particular case to be tried"). But the state appellate court was not objectively unreasonable in upholding the trial court's determination as to W.B. "[A] juror's occupation is generally a legitimate reason for a peremptory challenge." *Cook v. LaMarque*, 593 F.3d 810, 818 (9th Cir. 2010). Indeed, some state decisions suggest it is not uncommon for California prosecutors to summarily dismiss postal workers solely because of their profession. *See, e.g.*, *People v. Trinh*, 59 Cal. 4th 216, 242 (2014) (noting prosecutor stated that a postal worker is "not the type of juror I would keep"); *In re McGee*, No. B253231, 2014 WL 5233961, at *15 (Cal. Ct. App. Oct. 15, 2014) (unpublished) (noting the trial court stated it "is a well-known theory on the part of some prosecutors" that postal workers are not favorable jurors "whether it's a valid theory or not").

M.S.: Lastly, the prosecutor stated he struck M.S. because M.S. "quarreled" with defense counsel about the presumption of innocence and he was "concerned about a juror who was being so technical." The prosecutor noted the crimes at issue were complicated and potentially involved jury instructions for second degree murder, implied and express malice, and voluntary and involuntary manslaughter, and that he did not want a juror who was "going to quarrel with every single definition." The trial court stated it would not characterize M.S.'s interaction with defense counsel as a "quarrel," but rather a "discussion about the law." The court

6

stated it was "struggling" with the prosecutor's explanation and that it was "a close call." But even if M.S. did not quarrel with counsel during voir dire, the record contains support for the prosecutor's stated concern that M.S. might quarrel with definitions in the future. As the state appellate court observed, "the statements made by M.S. during voir dire supported the trial court's determination on this point." We thus conclude the state appellate court was not objectively unreasonable in upholding the trial court's "close call" determination as to M.S.

**AFFIRMED.**